STUDEBAKER BROS. MANUFACTURING COMPANY V.
SANTO TOMAS COAL COMPANY.

No. 427.

1.  **Charge of Court—Special Issues—Immaterial Error.**—Where the charge submits the matters involved by special questions, and omits one of the issues, which is called to the attention of the jury only in the general charge, this is calculated to retire such issue from their attention; but in order for this to be reversible error, it must appear that the omitted issue was a material one in view of what the jury did find.

2.  **Fact Case.**—For evidence, an entry on books of a garnishee company, held insufficient to show that such company was indebted to the defendant, its former trustee, see the opinion.

APPEAL from Webb.  Tried below before Hon. A. L. McLANE.

*F. B. Earnest* and *Herring & Kelley*, for appellant.—1.  The court having elected to present special issues to the jury, committed a reversible error in not so submitting every material question in the case. Frost v. Frost, 45 Texas, 324.

2.  General charges upon two issues, and special questions submitting only one of said issues, and a verdict for defendant based upon said special questions, is not a finding upon the issue not submitted in a special question.  Rev. Stats., arts. 1328, 1330; Frost v. Frost, 45

Texas, 324; Huyler v. Dohoney, 48 Texas, 237; Campbell v. Everts, 47 Texas, 107; Knight v. Railway, 41 Texas, 412.

A special verdict must find all the issues submitted by the charge, and if it fails to find any material issue so submitted, the court should refuse to receive it. Rev. Stats., art. 1331; Anderson v. Webb, 44 Texas, 147; Kerr v. Hutchins, 46 Texas, 384; Railway v. Snelling, 59 Texas, 116.

*A. Winslow,* for appellee.—1. Where the court in its instructions, as in this case, submits general and special issues for the consideration of the jury, and there is a general and special verdict for the defendant, each of which is consistent with the other, and both of which are responsive to the main and controlling issues involved in the cause as shown by the whole record, it is not error for the court to fail to submit an alleged special issue for categorical answer, when the identical matter was fully submitted in the main charge. Heflin v. Burns, 70 Texas, 347.

2. A verdict in response to special issues is sufficient if it find the controlling issues involved in the cause. Johnson v. Richardson, 52 Texas, 481, 498; Railway v. James, 73 Texas, 18.

3. If there be any evidence sufficient within itself upon which to found a verdict, this court will not reverse, even where it is not well satisfied that the verdict is right, or where upon the evidence it might have come to a different conclusion, or because the verdict might appear to the court to be founded on slight evidence. Railway v. Marcelles, 59 Texas, 337.

JAMES, CHIEF JUSTICE.—Appellant, on or about June 22, 1891, sued A. C. Hunt on a money demand, and on same date caused garnishment to be served on the Santo Tomas Coal Company. Plaintiff obtained judgment against Hunt, which judgment at the date of the trial was unsatisfied to the amount of $6041.30. The garnishee's first answer denied any indebtedness, and this was controverted by an allegation that plaintiff had reason to and did believe that at the time of garnishment the garnishee was indebted to Hunt for moneys advanced and services rendered in the management and carrying on of the company's business of mining and selling coal, and that such indebtedness was evidenced by the books of account kept by the garnishee company. The garnishee in reply pleaded general denial, and alleged that if it ever owed Hunt anything, it had been paid previous to the garnishment, and such indebtedness, if any, was barred by limitation.

The issues which plaintiff raised upon the evidence were, that a certain release executed by Hunt to the Santo Tomas Coal Company on May 14, 1891, purporting, for the consideration of $100, to compromise and release the company from all claims he had against it, was of no effect, because at that time Hunt was mentally incapable of contracting; also, that the release was made for the purpose of hindering

and delaying creditors, and on that account inoperative, the primary issue being, of course, the existence of an indebtedness from Hunt to the company which the garnishment could affect.

The case was submitted to the jury on the court's charges, none being requested by counsel, and the record does not contain any exceptions relating to testimony.

The correctness of the charge given by the court is questioned in but one particular. The court on the question of the existence of indebtedness to Hunt by the company, and on the question of his disability at the time of making the release, submitted the matters by special questions, and omitted to do this in respect to the question of fraud on creditors, this question being called to the attention of the jury only in the general charge. The verdict consisted of answers to the questions submitted. Appellant urges that it suffered injury by reason of this form of charge, it being calculated to retire the issue of fraud from the attention of the jury, and that this issue appears not to have been in fact considered by them. Technically there is some basis for the contention, but in order for it to lead us to reverse the judgment, it must appear that the issue was a material one in view of what the jury did find. The jury found in response to specific questions, that on July 22, 1891, Hunt was not indebted to the Santo Tomas Coal Company; that on May 14, 1891, the day the release was executed, he was not indebted to said company. It is clear that if these findings are supported by testimony, they go to the whole case, for if Hunt was not indebted to the company on May 14, 1891, the compromise and release evidenced by the writing of May 14th could not have been in fraud of anybody. In this connection it would matter not in what form the issue of fraud had been submitted. The finding that the company was not indebted, amounts to a finding against plaintiff on the issue of fraud.

Was there evidence to support the findings? There is testimony that A. C. Hunt took possession of the Santo Tomas coal mine in 1881, under a lease, and remained in possession until 1884, during which time it was being operated, he giving it his attention. The lease was to Hunt as trustee for the same persons who afterwards, in 1891, formed the Santo Tomas Coal Company. Between 1881 and 1884, the mines were operated first by the Mexican National Railroad Company and then by the Rio Grande & Pecos Railway Company, which was built and owned by Hunt. In 1884 this latter railway company went into the hands of a receiver, and the lessors resumed possession of the coal mine. In 1891, Hunt recovered possession of the mine by suit. Thereupon the Santo Tomas Coal Company was formed, composed of the same parties for whom Hunt as trustee had originally leased the mine, to wit, A. C. Hunt, Jr., Mrs. Isa H. Stearns, A. W. Wilcox, and another.

The manager of the defendant company produced its books, which disclosed an entry made about the time the company was formed, in 1891, showing a credit to A. C. Hunt, trustee, of $54,658. This credit

came to be entered from a statement prepared by Hunt, which was given to the manager, and by the manager to the bookkeeper, with direction to enter it. It was entered as in favor of A. C. Hunt. About a month afterwards, the manager, noticing that the word "trustee" was omitted, had it added.

The Milmo National Bank recovered a judgment against Hunt, and upon this, in May, 1892, a judgment against the Santo Tomas Coal Company, as garnishee, for about $20,000. This judgment was paid by a transfer from the beneficiaries of their interests in the property. By the testimony of defendant's manager, it appeared that Hunt had put in his time and some money in developing the mines, the witness estimating the money so put in at about $3000; that the lease provided that the lessors should not share in the profits of the mining operations until the expenses of opening and developing the mines had been first paid, and that they wanted to show a large expense account, and that Hunt told him that he had spent $27,000 in money in developing the mines, and that the enterprise owed him for services, attorney's fees, and other expenses, in all, the sum named in the statement, and as entered on the books. He further testified, that no books had been kept from which the statement could have been made, and that it was just made for the benefit of Macdonnell, one of the lessors.

With this evidence before the jury, it is our opinion that they were authorized to conclude that the company did not in fact owe Hunt anything at the time the receipt given by him was executed. The evidence showing an indebtedness consisted of his having expended money in respect to the mines, and rendered services, the amounts not being attempted to be ascertained by any evidence except this entry on the books. The circumstances shown to surround this entry were sufficient to justify the finding that the amount it showed was fictitious, in whole or in part. The evidence would tend to indicate that Hunt's advancements and services would reasonably not amount to such sum. Besides, the company, through its members, had already been required to settle the debt to Milmo National Bank of $20,000. Left to the jury on the facts and circumstances, we should not regard their finding, that at the time the release was given the company was not indebted to Hunt, as being against the evidence.

The court asked the jury to find:

"1. Was the Santo Tomas Coal Company indebted to A. C. Hunt on the 14th day of May, 1892 (the date of the release)? If you answer yes, what was the amount?" This was answered in the negative.

"3. Was the Santo Tomas Coal Company indebted to A. C. Hunt on the 22nd day of June, 1892 (the day of garnishment)? If yes, then say how much." This was also answered in the negative.

It seems to us reasonably certain that the first of the questions must have been understood by the jury as directing a finding as to whether or not there was an indebtedness to Hunt independent of the release. This we must assume, if we assume that they were of ordinary intelli-

gence.    The finding, according to this view, renders harmless any errors touching the issue of fraud.

If we were to say, however, that the finding of the jury in respect to the first question may have been the result of the receipt or release, and that they therefore did not consider and answer the question of indebtedness to Hunt on that date as an independent fact, nor consider the issue of fraud, it would seem that still we should not reverse the judgment, as it appears from the answers to other questions, the seventh and eighth, that they regarded the entry in the books as not evidencing an indebtedness to A. C. Hunt individually.    This would serve to show that the jury arrived at the finding of no indebtedness, independently of the release, in answering the question number one.

After these findings, the jury with propriety omitted to pass on other questions thus rendered unimportant.    We conclude that the judgment should be affirmed.

*Affirmed.*

Delivered September 19, 1894.